UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Scott Williams, *et al.*,

    Plaintiffs

    v.    Case No. 1:06cv833

ABX Air, Inc.,    Judge Michael R. Barrett

    Defendant.

**ORDER**

This matter is before the Court upon Defendant ABX Air, Inc.'s Partial Motions to Dismiss. (Docs. 6, 22) Plaintiffs have filed Responses in Opposition (Docs. 14, 23), and Defendant has filed Replies (Docs. 16, 29). Plaintiffs have also filed a Motion for Leave to file a Supplemental Complaint (Doc. 30). Counsel for Defendant has informed the Court that Defendant does not oppose the Motion for Leave. This matter is now ripe for review.

**I.    BACKGROUND**

Plaintiffs are a group of current employees and one former employee of Defendant. In the original Complaint, the International Brotherhood of Teamster-Airline Division ("the Union"), along with two individuals were named as Plaintiffs in this matter. After the filing of Defendant's first Motion to Dismiss, Plaintiffs amended the Complaint and omitted the Union as a party, and added thirteen other individuals as Plaintiffs. (Doc. 20) Defendant then filed a second Motion to Dismiss, addressing the changes made in the Amended Complaint. Counsel for Defendant has informed the Court that the arguments raised in its Motions to Dismiss are applicable to the allegations contained in the Supplemental

Complaint.

Defendant is an air carrier based in Wilmington, Ohio.[1] In the Amended Complaint, Plaintiffs allege that Defendant violated the Railway Labor Act ("RLA")[2] by a variety of acts that were intended to coerce, influence, or interfere with the right of Defendant's employees to seek union representation and by retaliating against union-supportive employees, including the suspension of Plaintiff Thomas Fiorentini and the termination Plaintiff Scott Williams. The Amended Complaint also contains a state-law claim for wrongful discharge based upon the termination of Plaintiff Williams.

## II. ANALYSIS

### A. Motion to Dismiss Standard

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *U.S. ex rel Bledsoe v. Community Health Systems, Inc.*, 2007 WL 2492439, *5 (6th Cir. Sept. 6, 2007) (slip op.), *citing Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Under general pleading standards, the facts alleged in the complaint need not be detailed,

---

[1] There appears to be no dispute between the Parties that Defendant is a carrier by air and thus is covered by § 2 of the Railway Labor Act as provided in 45 U.S.C. § 181.

[2] Section 152 (Third) of the Railway Labor Act prohibits "interference, influence, or coercion by either party (*i.e.* carrier or employees) over the designation of representatives." Section 152 (Fourth) provides:

> No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization . . . .

although "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.*, *quoting Twombly*, 127 S.Ct. at 1964-65 (alteration in original).

**B.     Standing**

Defendant first argues that the Union should be dismissed because it lacks standing under the RLA.  This argument is now moot since Plaintiffs' Amended Complaint is no longer brought on behalf of the Union.

Next, Defendant argues that all allegations that it engaged in improper activity which have not been directly and personally experienced by Plaintiffs should be dismissed for lack of standing.  Defendant concedes that for the most part, the new allegations in the Amended Complaint render its motion moot, but argue that certain allegations still do not involve injury-in-fact to the named Plaintiffs.  These allegations include:

> (1) certain conduct was "directed to each Plaintiff specifically and/or to other employees in the Plaintiff's presence." (Doc. 20, ¶ 21)
>
> (2) "a number of Union-supportive employees – including Plaintiffs Brett Curtis, Robin Soale and Henry Strong – were told by ABX supervisors and/or managers that they could not enter the building known as Hangar 1005 without express permission from a supervisor, even thought that building houses the only tool room for mechanics and the nearest restroom in relation to many of the mechanics' work locations." (Id., ¶ 24)
>
> (3) Plaintiff Beck "has witnessed ABX supervisors tell mechanics that, if the employees select Union representation, certain of the work now being performed by the maintenance department employees 'could disappear,' resulting in job losses for mechanics." (Id., ¶ 41)
>
> (4) "Plaintiff Curtis witnessed two ABX supervisors, one manager and a director observing him and several other employees in an intimidating manner . . ." (Id., ¶ 48)
>
> (5) "Plaintiff Easter witnessed two ABX supervisors, one manager and a director observing him and several other employees in an intimidating

manner . . ." (Id., ¶ 51)

(6) Plaintiff Newman "and other Union-supportive mechanics were ordered by supervisor Samuel Brewer to remove all Union-insignia items . . ." (Id., ¶ 71)

Any inquiry into a litigant's standing to sue involves examination of both constitutional limitations and prudential restrictions. *Allstate Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 456 (6th Cir. 2001), *citing Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Regarding the first inquiry, to satisfy the standing requirements imposed by Article III of the United States Constitution, "[a] plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coyne v. American Tobacco Company*, 183 F.3d 488, 494 (6th Cir. 1999), *citing Valley Forge Christian College v. Americans United for Separation of Church & State*, Inc., 454 U.S. 464, 473 (1982).

The second inquiry involves considering whether, as a prudential matter, the plaintiff is the proper proponent of the rights on which the action is based. *Singleton v. Wulff*, 428 U.S. 106, 112 (1976). The prudential standing doctrine embodies "judicially self-imposed limits on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 161 (1997). Because these prudential principles are "limits" on standing, they do not themselves create jurisdiction; they exist only to remove jurisdiction where the Article III standing requirements are otherwise satisfied. *American Civil Liberties Union v. National Sec. Agency*, 493 F.3d 644, 677 (6th Cir. 2007). First, the plaintiff must "assert his own legal rights and interests,

and cannot rest his claim to relief on the legal rights or interests of third parties." *Coyne*, 183 F.3d at 494, *citing Warth*, 422 U.S. at 499. Second, the plaintiff's claim must be more than a "generalized grievance" widely shared by a large class of citizens. *Id.*, *citing Valley Forge*, 454 U.S. at 474-75. Third, in a statutory case, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Id.*

Defendant argues that Plaintiffs allegations do not meet the "injury-in-fact" requirement because they are based upon conduct which Plaintiffs merely observed, versus conduct which Plaintiffs directly and personally experienced. However, the Court concludes that Defendant's argument is more properly addressed in terms of the prudential standing doctrine instead of the constitutional requirements since Defendant is in essence objecting to Plaintiffs' reliance upon the rights and interests of third parties.

Generally speaking, a party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). However, where there is "some genuine obstacle to" the third party asserting his or her rights, and "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue" then the litigant may be the proper person to assert the third party's right. *Singleton v. Wolff*, 428 U.S. 106, 114-16 (1976).

As one district court has explained, what constitutes a "genuine obstacle" to a third party's suit is not entirely clear:

> Some cases are illustrative. A third party faces a genuine obstacle to the assertion of his right if by litigating the issue, the third party would vitiate or chill the right which he seeks to protect. *See Singleton v. Wolff, supra*; *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). Another

> genuine obstacle to the assertion of a third party's rights is the problem of mootness. If the violation of the third party's rights will always resolve itself before it can be practically litigated, then it is functionally impossible for the third party to bring suit to protect his rights. In such a case, third party standing is most appropriate. *See, e.g.*, *Singleton v. Wolff*, *supra*. Still another genuine obstacle is found where the injured third party is contractually, or procedurally excluded from bringing suit. *See Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

*Hoke Co., Inc. v. Tennessee Valley Authority*, 661 F.Supp. 740, 749-50 (W.D.Ky. 1987) (finding no "genuine obstacle" based upon high cost of litigation). The Court finds that in the instant case, there is no obstacle to the other employees allegedly experiencing conduct violative of the RLA from bringing claims on their own behalf. Therefore, the Court concludes that the prudential standing doctrine prevents this Court from exercising any jurisdiction over any claims that Plaintiffs may be bringing on behalf of these third parties.

However, to the extent that Plaintiffs are relying upon the conduct observed by them to support their own claims under the RLA, the Court finds that these allegations are properly made a part of Plaintiffs' Amended Complaint. A claim under section 152 of the RLA raises the question of the employer's motivation. *See Adams v. Federal Exp. Corp.*, 470 F.Supp. 1356, 1364 (W.D. Tenn. 1979), *citing Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974). The Court finds that Plaintiffs' allegations regarding conduct witnessed by Plaintiffs, if proven, would serve as circumstantial evidence of Defendant's motivation, and would support Plaintiffs' RLA claims.

In summary, the Court grants Defendant's Motions to Dismiss to the extent that the Motions seek to dismiss any claims Plaintiffs are attempting to bring on behalf of other employees, but denies the Motions to the extent that Defendant argues that allegations regarding these third parties cannot be relied upon to support Plaintiffs' own claims under

the RLA.

### C. Public Policy Claim

Defendant argues that Plaintiffs Williams' state law claim for wrongful termination in violation of public policy should be dismissed for the failure to state a claim.

Under Ohio law, termination of an at-will employee is wrongful if the termination was against a clear public policy. *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994).[3] In *Collins v. Rizkana*, the Ohio Supreme Court adopted the following analysis for determining whether the termination was against public policy:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

652 N.E.2d 653, 657-58 (Ohio 1995). When analyzing the jeopardy element, a court must inquire "into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002). As the Ohio Supreme Court has explained:

> If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from

---

[3]The Parties apparently do not dispute that the RLA evinces a clear public policy. The Court notes that one of the express purposes of the RLA is "to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization." 45 U.S.C. § 151a (2).

> interfering with realizing the statutory policy. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Id.* (citations omitted).

The RLA implicitly authorizes an award of back pay and reinstatement when appropriate. *Adams v. Federal Exp. Corp.*, 470 F.Supp. 1356, 1361 (W.D. Tenn. 1979), *aff'd*, 654 F.2d 452 (6th Cir. 1981). Courts have also held that punitive damages, the right to a jury trial, and injunctive relief are available in wrongful discharge claims under the Act. *See Lebow v. American Trans Air, Inc.*, 86 F.3d 661 (punitive damages and jury trial); *Adams*, 470 F.Supp at 1362 (injunctive relief). However, the RLA itself does not provide any remedies for wrongful discharge in violation of the Act.[4] The Court finds that since the RLA provides no statutory remedy, there is no adequate remedy under the RLA to protect society's interests. Accordingly, the Court denies Defendant's Motions to Dismiss Plaintiff Williams' claim for wrongful discharge under Ohio law.

### D. Punitive Damages

Defendant argues that Plaintiffs' request for punitive damages should be dismissed because these remedies are neither provided by, nor appropriate under Sections 2, Third or 2, Fourth of the RLA.

While the Sixth Circuit has not addressed the availability of punitive damages under the RLA, a number of district courts have. Many of these courts have concluded that punitive damages are not available. *See Tipton v. Aspen Airways, Inc.*, 741 F.Supp. 1469, 1471 (D.Colo. 1990) ("Punitive damages are not recoverable for an RLA claim because

---

[4] Moreover, the private right of action under the RLA was judicially created. *Texas & New Orleans R.R. v. Railway & Steamship Clerks*, 281 U.S. 548 (1930).

they frustrate the RLA's remedial purpose."); *Maas v. Frontier Airlines*, 676 F.Supp. 224, 227 (D.Colo. 1987) (punitive damages are not recoverable under the RLA because national labor policy disallows such damages); *Brotherhood of Railway Carmen v. Delpro Co.*, 579 F.Supp. 1332, 1337-38 (D.Del. 1984) (punitive damages are not allowed in RLA actions as our "essentially remedial" labor policy is "inhospitable to punitive awards"); *Brady v. Trans World Airlines, Inc.*, 196 F.Supp. 504, 506-07 (D.Del. 1961) (disallowing punitive damages in employee's claim for reinstatement).

However, other district courts have allowed punitive damages where the plaintiff is not represented by a union or covered by a collective bargaining agreement. *See Beckett v. Atlas Air, Inc.*, 968 F.Supp. 814, 824 (E.D.N.Y. 1997) (punitive damages are available for unrepresented individuals in wrongful termination cases); *Riley v. Empire Airlines, Inc.*, 823 F.Supp. at 1016, 1021 (N.D.N.Y. 1993) (punitive damages are available for an individual employee who is not represented by a union that is in a position to negotiate with his employer on his behalf); *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 260 (N.D.Ill. 1992) (individuals are entitled to seek punitive damages where they are not represented by the union and had not entered into a collective bargaining agreement with the employer); *Belton v. Air Atlanta, Inc.*, 647 F.Supp. 28, 32 (N.D.Ga. 1986) (punitive damages are allowed for employees in unlawful discharge claims if they are not represented by a union); *Brown v. World Airways, Inc.*, 539 F.Supp. 179, 181 (S.D.N.Y. 1982) ("limitation of recovery to a backpay pittance . . . might encourage such an employer to continue illegal discriminatory practices which impede efforts to unionize its employees). The sole appeals court to decide the issue has determined "that an unrepresented

employee may seek punitive damages against his employer in an unlawful discharge action under the RLA." *Lebow v. American Trans Air, Inc.*, 86 F.3d 661, 672 (7th Cir. 1996).

These courts are careful to limit their holding to cases where the plaintiff is suing individually, and not represented by a union. As one court explained:

> [W]here the employee is not represented by a union which can protect his interests through collective bargaining or other methods, he lacks the power . . . to prevent an employer's abuses. And although the cases [finding punitive damages are not recoverable] have stated that the general purpose of the federal labor laws is remedial, there are special reasons for awarding punitive damages in a case where the employee is not represented by a union.

*Brown*, 539 F.Supp. at 180; *see also Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 672 (7th Cir. 1996) (allowing punitive damages for plaintiff not represented by union since this would not interfere with collective bargaining process); *cf. International Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42, 52 (1979) (disallowing punitive damages in RLA claim brought by employee against union for breach of the duty of fair representation, finding that the imposition of punitive damages could "disrupt the responsible decisionmaking essential to peaceful labor relations" and that "general labor policy disfavors punishment").

Since Plaintiffs are not represented by a union, the Court concludes permitting punitive damages for Plaintiffs' RLA claim would not disrupt national labor policy. Therefore, the Court finds that punitive damages are available in this matter, and denies Defendant's Motions to Dismiss to the extent that they seek to dismiss Plaintiffs' claim for punitive damages.

### E. Jury Trial

Defendant argues that Plaintiffs' request for jury trial should be denied because a

trial by jury is not available under Sections 2, Third or 2, Fourth of the RLA. Like the issue of punitive damages, courts have reached different conclusions regarding the right to a jury trial. *See Tipton v. Aspen Airways, Inc.*, 741 F.Supp. 1469, 1472 (D.Colo. 1990) (jury trial not available because plaintiffs are "limited to equitable remedies under the RLA"); *Maas v. Frontier Airlines, Inc.*, 676 F.Supp. 224, 227 (D.Colo. 1987) (jury trial not available because compensatory and punitive damages are not recoverable under RLA); *cf. Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 261 (N.D.Ill. 1992) (jury trial available because compensatory and punitive damages were sought); *Beckett v. Atlas Air, Inc.*, 968 F.Supp. 814, 826 (E.D.N.Y. 1997) (jury trial available even if claim for punitive damages alone were not sufficient to require jury because plaintiff seeks compensatory damages, which are considered legal in nature).

In *Lebow*, the Seventh Circuit concluded that because "punitive damages have traditionally been viewed as a legal remedy that must be imposed by a jury," a court's determination that such damages are available in a RLA wrongful discharge case is determinative of the question of the right to jury trial. 86 F.3d at 669-70, 672 n. 15 ("[w]e cannot agree that Lebow could have a right to request punitive damages but not to demand a jury trial. . . . Because we hold that Lebow has the right to seek one form of legal relief (punitive damages), a jury trial is necessary, and we need not decide whether the other relief sought (reinstatement with back pay and benefits) qualifies as legal or equitable."). The Court finds this reasoning sound. The Court also finds that Plaintiff Williams has made a request for compensatory damages under his RLA wrongful discharge claim, which other courts have found sufficient to require a jury.

Moreover, the Court notes that the Sixth Circuit has remanded a claim for wrongful

discharge under the RLA, without analysis, for a jury trial on a request for damages. *Dorsey v. United Parcel Service*, 195 F.3d 814, 818 (6th Cir. 1999) (" . . . the case is remanded to the district court with instructions to grant the plaintiff's motion for summary judgment on the issue of liability and to submit the question of damages suffered by the plaintiff to trial by jury in accordance with plaintiff's prayer for relief in his complaint.").

The Court denies Defendant's Motions to the extent that Defendant seeks to dismiss Plaintiffs' request for a jury trial.

### F. Attorney's Fees

Defendant argues that Plaintiffs' request for attorney's fees should be dismissed because this remedy is neither provided by, nor appropriate under Sections 2, Third or 2, Fourth of the RLA. Plaintiffs acknowledge that it is not clear whether attorney fees are available for RLA claims, and it is premature at this stage of the litigation to make a final determination on the matter.

It has long been the general rule in the United States that a prevailing party may not ordinarily recover attorney's fees in the absence of a statute or enforceable contract providing for a fee award. *Shimman v. International Union of Operating Engineers*, 744 F.2d 1226, 1229 (6th Cir. 1984). The "American Rule" regarding attorney fees was adopted by the Supreme Court in *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796), and has been reaffirmed numerous times by the Supreme Court. *Id.* The "bad faith" exception to the American Rule allows attorney fees in certain exceptional cases where the opposing party has acted in bad faith. *Id.* The Sixth Circuit permits attorney's fees based upon bad faith occurring during the course of the litigation, but does not allow an award of attorney's fees based solely upon the underlying claim. *Id.* at 1230.

Because such an award could be available to Plaintiffs, the Court finds that dismissing Plaintiffs' claim for attorney's fees would be premature at this juncture. *Accord Pinnacle Airlines, Inc.*, 2003 WL 23281960 (D.D.C. Nov. 5, 2003) (unpublished) ("At this early stage of the litigation, Pinnacle's motion to strike PACE's attorneys' fees request is premature, as later developments may provide a legitimate basis for an attorneys' fees award). Therefore, at this time, the Court denies Defendant's Motions to the extent that Defendant seeks to dismiss Plaintiffs' claim for attorney's fees.

### III. CONCLUSION

Base on the foregoing, it is hereby **ORDERED** that:

1. Defendant ABX Air, Inc.'s Partial Motions to Dismiss (Docs. 6, 22) are hereby **DENIED in PART** and **GRANTED in PART**;

    a. The Court grants Defendant's Motions to the extent that the Motions seek to dismiss any claims Plaintiffs are attempting to bring on behalf of other employees;

    b. The Court denies Defendant's Motions to the extent that Defendant argues that allegations regarding these third parties cannot be relied upon to support Plaintiffs' claims under the RLA;

    c. The Court denies Defendant's Motions to the extent that Defendant seeks to dismiss Plaintiff Williams' claim for wrongful termination in violation of Ohio public policy;

    d. The Court denies Defendant's Motions to the extent that Defendant seeks to dismiss Plaintiffs' claim for punitive damages;

    e. The Court denies Defendant's Motions to the extent that Defendant seeks to dismiss Plaintiffs' request for a jury trial;

    f. The Court denies Defendant's Motions to the extent that Defendant seeks to dismiss Plaintiffs' claim for attorney's fees;

2. Plaintiffs' Motion for Leave to file a Supplemental Complaint (Doc. 30) is hereby **GRANTED**; and

3. Plaintiffs shall file a Second Amended Complaint containing the supplemental allegations within **ten (10) days** of entry of this Order.

**IT IS SO ORDERED.**

  */s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court